### PINKERMAN v. SOUTHERN BELL TEL. CO., et al.

Industrial Commission.
April 22, 1949.

Brown & Dean, Goble D. Dean, Miami, for claimant.

Loftin & Wahl, Harold B. Wahl, Jacksonville, and Dan M. Byrd, Jr., Atlanta, Georgia, for the employer.

JAMES R. KNOTT, Deputy Commissioner.

On October 9, 1946 Patricia P. Pinkerman sustained a back injury arising out of and in the course of her employment

with Southern Bell Tel. & Tel. Co. in Hollywood, Florida. She was treated by Dr. A. R. Taylor of Ft. Lauderdale and Dr. Robert P. Keiser of Coral Gables at the expense of the employer, and was paid compensation for temporary total disability following the injury until September 1, 1947, when payment for 30% permanent partial disability was initiated pursuant to Dr. Keiser's final diagnosis of traumatic arthritis resulting in permanent physical impairment. The employer incurred medical, surgical and hospital expenses totaling more than $3,000 up to and including February 9, 1948. Since that date, the claimant has incurred certain additional expenses for remedial treatment for which the employer denies liability. Payments of compensation for permanent partial disability, on the basis stated, have been continued by the employer.

The claimant here seeks to recover from the employer the expenses incident to the medical and surgical treatment procured by her on her own initiative. The employer denies liability therefor on the grounds that such treatment was unnecessary, and was furnished without the authority of the employer and without prior direction of the commission.

A brief review of the claimant's medical history following her injury is necessary. Dr. Taylor, who first treated Mrs. Pinkerman, found that her disabling symptoms of low back pain were not relieved by conservative treatment, and called Dr. Keiser, an orthopedic surgeon, into consultation. On June 10, 1947, the latter surgically explored the spinal canal, in an effort to locate and remove a protruded intervertebral disc, which was believed to be the cause of her pain. The operation did not reveal the existence of a protruded disc; although Dr. Keiser found and removed a bone spur from the spinal canal. The claimant showed no improvement following the operation; the disabling low back pain persisted. Having concluded that claimant's condition was not due to the cause first suspected, a ruptured intervertebral disc, Dr. Keiser ultimately made a diagnosis of traumatic arthritis, with some residual nerve root irritation of uncertain origin, and determined her to be permanently partially disabled to a degree of thirty per cent. The claimant requested the employer to furnish further medical treatment for the relief of her symptoms, and under date of June 29, 1948 was advised as follows by the employer:

"Confirming our telephone conversation with your husband. Dr. Keiser, in his letter to us dated December

26, 1947 advised that you had a 30% partial disability and that present compensation payments are being made on this basis.

"Since this disability is being compensated for under the law, and since your present discomfort no doubt arises out of and is a part of this disability, it does not appear that we should authorize further medical attention for a disability that is being compensated in accordance with the law."

Dr. Taylor, who had continued to attend the claimant, recommended consultation with a neurological surgeon and made arrangements for her to visit the Mayo Clinic at Rochester, Minnesota. After claimant's decision to go there, during July, 1948, her husband asked the employer if the latter would pay the expenses of the contemplated trip, and the employer reiterated the position stated in the letter quoted above.

The claimant, accompanied by her husband, thereafter went to the Mayo Clinic where, after extensive neurological, orthopedic and x-ray examination, it was decided that her condition was due to a protruded intervertebral disc. On July 30, 1948 Dr. J. Grafton Love, a neurological surgeon at the clinic, performed an operation removing a protrusion of the fourth lumbar disc on the left side, and Dr. H. H. Young, an orthopedic associate, carried out a bone graft fusion incident to the disc condition. The claimant was dismissed from the clinic on August 18, 1948, and returned to her home, to be attended again by Dr. Taylor through the healing period following the operation.

The weight of the medical evidence establishes (1) that the claimant's injury of August 9, 1946 resulted in a protruded disc which has caused her disability since that time, Dr. Keiser's failure to observe the disc being probably due to a temporary recession of the protrusion; (2) that prior to claimant's treatment at Mayo Clinic, the employer, acting upon Dr. Keiser's opinion that it would be of no benefit, declined to furnish claimant further medical treatment; (3) that claimant's subsenquent operation at Mayo Clinic effected a cure of the disc condition, the underlying cause of her disability, so that after the healing period from the operation terminates, little or no disability will remain.

The workmen's compensation law provides as follows:

Section 440.13 (1) F.S.A. "The employer shall furnish such medical, surgical and other attendance or remedial treatment under the direction and supervision of a qualified physician or surgeon, nurse and hospital service, medicine, crutches, artificial members, and apparatus for such period as the nature of the injury or the process of recovery may require. If the employer fails to provide the same after request by the injured employee, such injured employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by the commission . . .

Section 440.13 (3) (a) F.S.A. "All fees and other charges for such treatment or service shall be limited to such charges as prevail in the same community for similar treatment of injured persons of like standard of living, and shall be subject to regulations by the commission, who shall adopt schedules of charges for such treatment or services, except the total charge against the employer for such services and supplies shall not exceed the sum of one thousand dollars; provided, however, that if the nature of the injury or the process of recovery requires medical, surgical, hospital, and other attendance or remedial treatment, in addition to the one thousand dollars allowed, the industrial commission may on its own initiative or upon the application of any party in interest, order the employer or insurance carrier to furnish such additional treatment as the nature of the injury or the process of recovery may require."

The question here has been fairly stated by the employer as follows:

Does the commission have jurisdiction under Section 440.13 (3) (a) to require an employer to reimburse an employee for medical expenses in excess of $1,000 in the absence of an order by the commission, issued prior to the time the expenses are incurred, requiring the employer to furnish such medical attention?

It is argued by the employer's able counsel that the commission cannot require the employer to reimburse the employee for medical expenses in excess of $1,000 already procured without the commission's advance order, but can only order the employer to "furnish" additional treatment. Cases are cited from foreign jurisdictions to the effect that a provision such as that contained in our law does not contemplate that an award may be subsequently entered so as to be retroactive, and have the effect of relating back to the time when it was first found that additional treatment would be required.

The question involved here concerns the lawful power and authority of the commission. If the contention of the employer

is well founded, it follows that in a case involving application to the commission for an order extending the employer's liability, where the medical evidence available made it appear that further treatment would be of no avail, causing the commission to deny claimant's application, and where successful treatment subsequently procured by claimant conclusively demonstrated that the commission had committed error in refusing the application — under these circumstances, if prior direction by the commission is always necessary, the claimant, as a result of the commission's self-evident error, would necessarily be liable alone for the expense of such treatment. The commission would be without power to correct its mistake by a "retroactive" order. Can it be said that the Act, construed in the light of its liberal purpose as remedial legislation, could properly be interpreted to permit that result? We think not. There is no substantial difference between that case and one, as here, where the claimant, through inadvertence or otherwise, failed to make the timely application before incurring further medical expense, yet subsequently demonstrated successfully that the expense was justified.

If application be made by the injured employee for additional medical treatment beyond the $1,000 limit, there are only two alternatives open to the commission: either it can grant the application, or deny it. If the application is granted, the employee is "furnished" with the further treatment sought without further question. If the application be denied, and it be later established that the further treatment sought was in fact necessary, we think the commission's order may lawfully be corrected retroactively so as to require the employer to pay the expenses of the successful treatment procured at the employee's own initiative. If the commission is thus lawfully empowered in such a case to order the employer to pay the expenses after they have already been incurred by the employee, it may be said that the commission's power leaps the "retroactive" hurdle; a prior order by the commission is not mandatory, and the commission *in the exercise of a sound discretion* can order the employer to pay such expenses in the absence of any order made prior to the time they were incurred.

The claimant took her chances in her trip to the Mayo Clinic; if she was not improved or cured there, certainly she could not with any justice claim the costs of the unsuccessful treatment; the employer's judgment against the advisability of the treatment would be vindicated. But here, claimant's judgment

as to its advisability was vindicated and the employer's position in the matter, though apparently justified by the evidence previously available, was shown to be in error. It should be pointed out that if the claimant had made prior application for an order requiring the employer to furnish additional medical treatment, the commission, on the basis of the then available evidence, which included expert opinion by a fully competent orthopedic surgeon, would in all probability have denied the application. In the latter event, under the employer's interpretation of the Act the claimant would not now be entitled to an order requiring the employer to pay the expense of her treatment, notwithstanding a showing that the expense had been justified and required, because under the employer's interpretation the Act does not allow the commission to require the employer to pay such expense *after* it has been incurred by the employee; it can only order the employer "to furnish" the additional treatment. The claimant would thus have become the victim of the commission's error. To penalize the claimant for her failure to make prior application under these circumstances, where such application if made would probably have been denied, would be manifestly unjust, and is not warranted under a proper interpretation of the Act. It must be held that the treatment claimant received at the Mayo Clinic was necessary for her recovery, and that her claim for expenses incident thereto is valid.

It is urged by the claimant that the employer, by voluntary payment of more than the nominal maximum of $1,000 for medical expense without order or authority of the commission, previous to the treatment constituting the subject of this claim, thereby waived its right to object to the fact that claimant's additional expense was incurred after the $1,000 limit had been reached. In view of the conclusion reached above, however, basing the employer's liability on other grounds, it will not be necessary to consider this question.

A subsidiary matter is presented for determination, regarding the end of claimant's period of temporary total disability. As stated above, the carrier commenced payments of compensation for permanent partial disability on September 1, 1947. Claimant's subsequent disability, however, has since been determined to be of a temporary, rather than a permanent, nature, due to her operation at the Mayo Clinic; it being indicated that little, if any, permanent disability will remain after the completion of the post-operative healing period. It

is established by the weight of the medical and other evidence that claimant's period of temporary total disability ended on January 15, 1949, since which time she has continued to be disabled to a partial degree sufficient to prevent her from resuming all of her former regular duties as a telephone operator or to perform any work which might require her to remain seated continuously for several hours. It is not indicated that claimant has as yet returned to any remunerative employment, or that she has been able to find work which she is presently capable of performing. The compensation paid her up to January 15, 1949, though intended for permanent disability, will be construed as payment for temporary total disability, and payments made since that date will be considered as applicable toward her compensation for temporary partial disability. The employer is directed to continue the compensation presently paid her, at the rate of $19.56 per week, until modified or terminated in accordance with the provisions of the Act. Payments may be discontinued when claimant's temporary period of lowered earning capacity terminates. The question of the existence and degree of permanent partial disability cannot be determined at this time, and therefore is not considered in this award.

The employer is found liable for the expenses reasonably incident to claimant's medical treatment at the Mayo Clinic, including those of her post-operative care; for certain costs herein, and for a reasonable attorney's fee for claimant's counsel, and is accordingly ordered and directed to pay:

(1)   To the Mayo Clinic, the sum of $477, representing the amount remaining due on the total bill of the clinic, $100 of which has already been advanced and paid by claimant and her husband.

(2)   To St. Mary's Hospital, Rochester, Minnesota, for the costs of claimant's hospitalization at the time of her treatment, the sum of $250.15.

(3)   To Dr. A. R. Taylor of Ft. Lauderdale, for post-operative medical care, the sum of $55.

(4)   To the claimant and her husband, Clarence R. Pinkerman, in addition to the compensation presently payable to her for temporary partial disability, the following several amounts:

| | |
|---|---:|
| Reimbursement for part payment of Mayo Clinic bill....$ | 100.00 |
| Transportation from home to Mayo Clinic and return for claimant and her husband, who accompanied her.......... | 404.00 |
| Hotel bill at Rochester for Clarence R. Pinkerman.......... | 38.25 |
| Services of practical nurse after returning home, until November 30, 1948 ............................................................... | 335.00 |
| X-rays taken November 30, 1948, for inspection by Mayo Clinic physicians ................................................................ | 15.00 |
| Sedatives, bandages, and incidentals .................................... | 100.00 |
| Transcript of deposition of Dr. J. Grafton Love—stenographic costs and postage ................................................. | 43.00 |
| Total ....................................................................$ | 1,035.25 |

(5)    To Brown and Dean, Esqs., claimant's counsel, the sum of $500.

The claimant shall be furnished by the employer with such further remedial treatment and care as the process of her recovery may require.

Claimant's request that an assessment of costs against the employer include the fee of Dr. Love as an expert witness and an additional attorney's fee for local counsel in taking Dr. Love's deposition is denied.